HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAX-INF (NINGBO) BABY PRODUCT,<br><br>                    Plaintiff,<br><br>        v.<br><br>DIONO, L.L.C.,<br><br>                    Defendant. | CASE NO. C16-5938RBL<br><br>ORDER<br><br>[Dkt. #s 29, 32, and 35] |

THIS MATTER is before the Court on the following motions: (1) Plaintiff Max-Inf's Motion for Partial Summary Judgment, seeking judgment on its breach of contract claim under the Convention on the International Sale of Goods (CISG) [Dkt. #29]; (2) Defendant Diono's Motion to Continue Max-Inf's Motion under Fed. R. Civ. P. 54(d), so that it can conduct discovery into whether Max-Inf owns the claims it is asserting, and whether Diono's debt has been paid or offset [Dkt. #35]; and (3) Diono's own Motion for Partial Dismissal under Fed. R. Civ. P. 12(b)(7), arguing that Max-Inf has failed to join an indispensable party, Sinosure, a Chinese insurer that apparently agreed to cover at least some of Max-Inf's loss if Diono did not pay [Dkt. #32].

1    Max-Inf paints the dispute as a garden-variety breach of contract claim. It is a Chinese
2 company that manufactures child car seats. It claims it contracted with a U.S. retailer, Diono, to
3 custom-build $880,000 worth of seats pursuant to 18 Purchase Orders (the "Old POs"), and that
4 it delivered the seats to Diono as agreed. It claims that Diono accepted delivery but refused to
5 pay. It sued[1] in this Court, asserting four claims: two breach of contract claims[2] under the CISG,
6 promissory estoppel, and tortious interference with a business expectancy. Max-Inf seeks partial
7 summary judgment on its Old PO breach of contract claim.

8    Diono claims the dispute is far more complex, involving international law, Chinese law,
9 confusing and possibly nefarious assignments and re-assignments of its debt, insurance
10 payments, offsets, absent indispensable parties, missing discovery, and questions of fact.

11    Diono seeks a continuance of Max-Inf's motion. It wants time to investigate whether
12 Max-Inf actually even *owns* the alleged debt, arguing Max-Inf has not pled it is the real party in
13 interest, though Diono does not dispute that Max-Inf was its contracting partner. It claims that
14 Max-Inf assigned the collection effort to its Chinese "export credit" insurer, Sinosure, possibly in
15 lieu of or as a condition of making a claim against its policy. Sinosure in turn engaged a U.S.
16 collection agency, Brown & Joseph, to collect the debt. That effort failed. Max-Inf claims the
17 debt was re-assigned to Max-Inf so that it could pursue this lawsuit, but Diono claims there are
18 questions of fact about who owns the debt.

---

[1] There were two prior lawsuits, one in this court that was dismissed without prejudice, and one in state court that is currently stayed.

[2] Max-Inf's second breach of contract claim asserts that it prepared to manufacture seats under a set of "New POs," but that claim is not at issue in these motions.

Diono also claims it needs to investigate whether Max-Inf has already been paid some portion of its debt, by Sinosure—apparently claiming that if the insured is compensated by its own insurance, the breaching party is not obligated to pay. This is a novel argument under Washington law, though Diono seems to argue that that issue can and should be resolved in this manner under Chinese law.

Diono also opposes Max-Inf's motion on the merits. It claims that it purchased debt Max-Inf owed to one of its own suppliers (Brilliant), and that it used that debt (again, under Chinese law) to pay some or all of its own debt by serving on Max-Inf an "Offset and Deduction Notice." Indeed, it claims that Sinosure's partial payment to Max-Inf ($384,000) is evidence that Sinosure agreed that some portion of the debt was offset or otherwise in doubt, and thus that there are questions of fact about how much it owes Max-Inf. Diono argues there are questions of facts about the effects of the Sinosure assignments and payments, and about its own offset claim.

At the same time, Diono seeks dismissal of Max-Inf's Old PO and tortious interference[3] claims under Rule 19 and Rule 12(b)(7). It argues that these claims cannot proceed in Sinosure's absence and should be dismissed.

In evaluating such a claim, the Court must first determine whether an absent party should be joined as a "necessary" party under Rule 19(a). A party is "necessary" if (a) the Court cannot accord complete relief among the existing parties in that party's absence; or (b) the absent party claims an interest relating to the subject of the suit and is so situated that disposing of the suit in that party's absence may: (i) impair or impede an interest as a practical matter, or (ii) leave

---

[3] Max-Inf claims generally that Diono interfered with its business relationship with Sinosure.

existing parties subject to a substantial risk of double, multiple, or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a).

If a necessary party cannot be joined for practical or jurisdictional reasons, the Court must *then* determine whether in "equity and good conscience" the suit should be dismissed because the party is "indispensable." Fed. R. Civ. P. 19(b). An indispensable party is a party whose participation is so important to the case's resolution that the suit must be dismissed if the absent party's joinder is not feasible. *Id.*

We are several steps short of determining that Max-Inf's claims should be dismissed because Sinosure has not been joined. The Court cannot even conclude on this record that Sinosure's presence is *necessary*. It is difficult to ask for discovery into these issues and to simultaneously argue that the case cannot proceed at all because the potentially involved party is not present in the case. If Diono claimed it owed Sinosure, and not Max-Inf, it could perhaps avoid the risk of inconsistent obligations through interpleader. Or it might claim that it already paid Sinosure, and that Max-Inf should seek its money there, instead.

But these are not Diono's arguments. Instead, it claims it needs time to investigate who actually owns the debt that facially belongs to Max-Inf. Or to conduct discovery to support its theory that if Sinosure already paid Max-Inf, Diono is off the hook. Diono's positions undermine its claims that it already faces multiple or inconsistent obligations, or that complete relief cannot be afforded in Sinosure's absence. It does not need to join Sinosure (or to require Max-Inf to try and do so) in order to investigate (and make) these arguments. In any event, the Court is not persuaded that a seller's insurance company is an indispensable party in a collection action against a buyer.

\*\*\*

Diono's Motion to Continue [Dkt. # 35] Max-Inf's Partial Summary Judgment Motion [Dkt. # 29] is **GRANTED**. That Motion is **RE-NOTED** for May 26. The parties may each file one additional brief on that motion by May 19, and a reply to the other's filing by May 26. These filings should address the choice of law, Sinosure's payment and its effect on the Old PO claim, the claimed offset, and whatever else the parties think will advance their cause. On this record, the Old PO claim appears to involve questions of fact that preclude summary judgment, notwithstanding the Court's concern that Diono has lobbed straw man arguments in an effort to avoid the inevitable.

Diono's Motion to Dismiss [Dkt. # 32] Max-Inf's Old PO and tortious interference claims because they cannot proceed in Sinosure's absence is **DENIED**.

IT IS SO ORDERED.

Dated this 28th day of April, 2017.

_____

Ronald B. Leighton
United States District Judge